IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RACHEL ROSE,                      )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-16-109-JHP-KEW
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Rachel Rose (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 23 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning April 15, 2009 due to limitations resulting from seizures, depression, PTSD, borderline schizophrenia, mood disorder, and low IQ.

### Procedural History

On August 27, 2012, Claimant protectively filed for disability

3

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 4, 2014, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On October 22, 2014, the ALJ issued an unfavorable decision. On February 1, 2016, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to include limitations in the RFC for seizures while at work; (2) failing to assess whether Claimant met or equaled a listing due to her seizures; (3) failing to properly evaluate the medical evidence and include various limitations from her conditions in the RFC; and

4

(4) failing to properly evaluate the medical opinion evidence.

**Evaluation of Claimant's Seizure Condition**

In his decision, the ALJ determined Claimant suffered from the severe impairments of seizures, mood disorder, and low IQ. (Tr. 21). The ALJ concluded that Claimant retained the RFC to perform a full range of work at all exertional levels with the non-exertional limitations of requiring seizure precautions, such as avoiding hazards like heights and open or moving machinery. Claimant was further limited by the ALJ to simple, repetitive tasks. She could also relate to supervisors and co-workers only superficially. Claimant was found to not be able to work with the general public. (Tr. 23).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of hand packager and laundry sorter, both of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 34). As a result, the ALJ found Claimant was not disabled from April 15, 2009 through the date of the decision. Id.

Claimant first contends that the ALJ should have included limitations for her seizure disorder in the RFC. The ALJ included a non-exertional precautionary restriction for Claimant's seizure condition but Claimant asserts this does not account for the effect

5

the condition has upon her ability to engage in work activity.

Several physicians either examined Claimant or reviewed her medical records but none determined Claimant was incapable of performing work or was severely restricted due to her seizure condition. Dr. David Bailey, a reviewing consultative physician, found in March of 2013 that Claimant was "partially credible" based upon the fact the treating physicians for her seizure condition at Hastings Indian Hospital noted Claimant's non-compliance with medication and suspected pseudoseizures. (Tr. 74).

Similarly, Dr. Lise Mungul, also a reviewing consultative physician, found the same evidence of medication non-compliance and suspected pseudoseizures. Dr. Mungul also noted Claimant's seizures were better and that Claimant had a history of frequent seizures but the descriptions were inconsistent and atypical for epileptogenic seizures. (Tr. 103).

On a functional level, Dr. Edith King found Claimant was not significantly limited except in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. She concluded Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could adapt to a work situation, but could not relate to the general public. (Tr. 74-75).

6

Dr. Randy Cochran made similar findings in July of 2013. (Tr. 104-06).

Claimant was examined by Dr. Ronald Schatzman on February 18, 2010. She reported seizures which lasted 15 minutes which caused her to be tired and sore for the rest of the day. While noting Claimant's seizure disorder, Dr. Schatzman's examination of Claimant was largely normal, finding in his neurological examination that Claimant's cranial nerves II - XII were grossly intact, deep tendon reflexes were normal in all extremities bilaterally, no sensory or motor deficit, finger-to-nose and heel-to-shin tests were normal, no pronatal drift was noted, and Romberg's and Barbinsky's were negative. (Tr. 329-31).

Claimant was also examined on three occasions by Dr. Denise LaGrand. Dr. LaGrand estimated Claimant's IQ at 70-79 which indicated borderline intellectual functioning. She concluded Claimant "was not a good historian and was inconsistent in her reporting of symptoms." She found Claimant was "childlike and naive" but that, in spite of her low IQ, "she had minimal literacy skills and is able to adequately care for herself and her daughter, living independently despite her seizures and mental health issues." (Tr. 742). Her cognitive functioning was not expected to change significantly, but "job training, adult basic education or vocational rehabilitation may help her learn skills she can use to

be successful in a structured work setting." (Tr. 743).

With no medical evidence to support further restrictions attributable to Claimant's seizure condition, the ALJ was not required to set forth additional limitations upon Claimant's ability to engage in basic work activity in the RFC. While the most current authority on the subject requires an ALJ to explain the basis for excluding any limitation at step five from a severe impairment found at step two, the ALJ did so in this case, finding that the evidence did not support further restrictions due to this condition.

Claimant also contends the ALJ failed to consider whether her seizure condition met or equaled a listing. The ALJ concluded when considering the applicability of the listings that "[t]here is no evidence that the claimant's seizure disorder manifests residuals of unconventional behavior or significant interference with activity during the day, and is controlled by properly regulated medication." (Tr. 22). The ALJ then cited verbatim Soc. Sec. R. 87-6 concerning "The Role of Prescribed Treatment in the Evaluation of Epilepsy" which sets forth the prerequisites for considering a listing based upon seizures – namely, that medication has been attempted as appropriate treatment and the condition continues to impose restrictions on a claimant's ability to work.

Claimant bears the burden of demonstrating a prima facie case of disability at steps one through four of the sequential

8

evaluation. Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003)(citation omitted). This burden extends to step three where a claimant must prove he meets or equals all of the specified medical criteria associated with a particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). By finding that Claimant's seizure condition was controlled by medication, the ALJ effectively found that Claimant failed to meet her burden at step three as the listings pertain to seizures. Claimant's talismanic requirement that the specific listing numbers of 11.02 and 11.03 be set forth in the decision finds no support in the law.

**Consideration of the Medical Evidence**

Under the somewhat terse heading of "This ALJ Plays Doctor and VE", Claimant challenges the ALJ's consideration of the medical evidence in a litany of statements and rhetorical questions which ostensibly gives rise to error. Claimant appears to argue that every instance where the ALJ draws a conclusion from the medical evidence, he is improperly "playing doctor" and must be reversed. Claimant is wrong. The ALJ is permitted to arrive at conclusions as to functional limitations which are based upon the medical evidence of record. The ALJ did so in this case. Many of Claimant's challenges arise from citing her subjective statements to medical professionals as a diagnosis and basis for restrictions.

9

These statements do not constitute medically supported evidence.

Moreover, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The citation to a plethora of conditions from which Claimant allegedly suffers does not translate into functional restrictions in Claimant's ability to engage in basic work activity. No error is found in the ALJ's consideration of the medical evidence.

**Consideration of the Opinion Evidence**

Claimant contends the ALJ failed to properly weight the opinions of Dr. LaGrand. Specifically, Claimant asserts the ALJ

should have discussed Dr. LaGrand's findings that Claimant would need assistance with her benefits, had dyslexia, and her condition was not likely to improve in the succeeding 12 months. Claimant also contends the GAF scores should have been discussed and considered.

As with many of this Claimant's arguments, she asserts form over substance. The medical record is devoid of any evidence that that would demonstrate a significant functional limitation upon Claimant's ability to work resulting from these conditions. *See* Duncan v. Colvin, 608 Fed. Appx. 566, 574 (10th Cir. 2015). Additionally, Claimant interprets the statement by Dr. LaGrand in her report that vocational training "may help [Claimant] learn skills she can use to be successful in a structured work setting" as a testament to Claimant's inability to work. In fact, the ALJ appropriately considered this statement as an indication that Claimant is not precluded from engaging in basic work activity.

Claimant also stated that the ALJ's failure to discuss her GAF score provided by Dr. LaGrand constituted error. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished

11

decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability.  *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)).  The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere.  Lee, *supra* at 3.  However, a GAF of 50 or less does suggest an inability to keep a job.  Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)).

An ALJ is required to consider all relevant evidence in the record.  Soc. Sec. R. 06-03p.  He is not, however, required to discuss every piece of evidence in the record.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).  Dr. LaGrand assessed a GAF of 50 in 2010, which would indicate an adverse affect upon Claimant's ability to work, and 65 in 2012, which would indicate mild impairment.  This Court finds

the ALJ was under no legal obligation to discuss Claimant's GAF scores and the failure to do so certainly does not warrant reversal.

Claimant also challenges the ALJ's assessment of the report of Dr. David E. Hansen dated April 28, 2014. (Tr. 1247-52). The ALJ noted Dr. Hansen's finding that an EEG did not verify her seizures and that the standard EEG performed July 18, 2013 was normal without abnormality. He also noted the inconsistency in the testing of Claimant's personality/emotional functioning, indicating Claimant may have had comprehension difficulties which would render the profile invalid. Claimant's scores were indicative of heightened anxiety, borderline personality characteristics, and elevated somatic concerns. Because of the possibility of conversion disorder which might bring about Claimant's seizures, Dr. Hansen recommended intensive psychotherapeutic treatment. Dr. Hansen concluded that Claimant would likely experience significant difficulty within competitive employment settings. (Tr. 30-31).

The ALJ considered Dr. Hansen's report "very good" but because of the heightened inconsistency scores, he considered the validity of the report to be lacking. He considered Dr. Hansen's finding of Claimant's employment as "unlikely" to be an insufficiently firm finding that Claimant could not work and, therefore, did not give

the opinion controlling weight. Dr. Hansen recommended further testing in order to ascertain the source of the seizures. (Tr. 33).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

14

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The vagueness of the conclusions from the testing due to the heightened validity scores justified the ALJ's rejection of providing Dr. Hansen's opinion controlling weight. It is apparent from the ALJ's decision that Dr. Hansen's evaluation and efforts were not rejected by the ALJ but rather were not subject to translation into the functional assessment which the ALJ was required to make. This Court finds no error in the evaluation of Dr. Hansen's opinion given the inconclusive nature of his findings.

15

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 29th day of August, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE